Antoinette C. Taylor
1082 Dotland Circle
Shelbyville, Kentucky 40065
502.437.5375

Plaintiff in Pro Se

FILED
DISTRICT COURT CLERK
WESTERN DISTRICT OF KY

**13 FEB 26 PM 4:49**

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## LOUISVILLE DIVISION

| | |
|---|---|
| Antoinette C. Taylor, an individual | ) CIVIL ACTION NO. 3:13-cv-259-S |
| | ) |
| Plaintiff, | ) COMPLAINT FOR: |
| | ) |
| v. | ) 1. INTENTIONAL RACE |
| | )    DISCRIMINATION |
| | ) 2. AGE DISCRIMINATION |
| | ) 3. NEGLIGENCE |
| | ) 4. WRONGFUL DISCHARGE |
| 3B Enterprises, LLC d/b/a 3B Holdings | ) 5. INTENTIONAL INFLICTION OF |
| Company, Inc., & Home Instead Senior Care; | )    EMOTIONAL DISTRESS/ |
| Rebecca (a.k.a. Becky) J. Beanblossom, | )    OUTRAGEOUS CONDUCT |
| Individually and in her capacity as Owner & | ) 6. CONSPIRACY |
| an employee of Home Instead Senior Care; | ) 7. BREACH OF THE COVENANT OF |
| Brent C. Beanblossom, Individually and in his | )    GOOD FAITH AND FAIR |
| capacity as Co-Owner & an employee of | )    DEALING |
| Home Instead Senior Care; | ) 8. RETALIATION FOR REPORTING |
| Kim Little, Individually and in her capacity as | )    ELDER ABUSE AND UNSAFE |
| Director of Client Care and on-call manager & | )    CONDITIONS |
| an employee of Home Instead Senior Care; | ) |
| Home Instead Senior Care Franchisor acts as | ) |
| delegator and authorizer of | ) |
| Home Instead Senior Care; | ) |
| Mercy Sacred Heart, Inc. d/b/a | ) |
| Sacred Heart Village, Rehabilitation Agency & | ) |
| Daybreak Adult Day Center; | ) |
| Kim Thieneman, Individually and in her capacity | ) |
| as Executive Director & an employee of | ) |
| Sacred Heart Village, inclusive, | ) |
| | ) |
| | ) |
| | ) |
| Defendants. | ) JURY TRIAL DEMANDED |
| | ) |

SERVE:     Registered Agent of 3B Enterprises, LLC d/b/a
           3B Holdings Company, Inc., and Home Instead Senior Care,
           Rebecca (a.k.a. Becky) J. Beanblossom, and
           Brent C. Beanblossom
           Brent C. Beanblossom, Representative
           Home Instead Senior Care
           4610 Taylorsville Road, Suite 100
           Louisville, Kentucky 40220

           Kim Little,
           Home Instead Senior Care
           4610 Taylorsville Road
           Louisville, Kentucky 40220

           Registered Agent of Home Instead Senior Care Franchisor
           Michaelle L. Baumert, Representative
           Husch Blackwell
           1620 Dodge Street, Suite 2100
           Omaha, Nebraska 68102

           Registered Agent of Mercy Sacred Heart, Inc. d/b/a
           Sacred Heart Village, Rehabilitation Agency, and
           Daybreak Adult Day Center
           Kim Thieneman, Representative
           Sacred Heart Village
           2120 Payne Street
           Louisville, Kentucky 40206

           Kim Thieneman
           Sacred Heart Village
           2120 Payne Street
           Louisville, Kentucky 40206

*   *   *   *   *   *   *

## COMPLAINT

Comes the *Pro Se* Plaintiff, Antoinette C. Taylor (hereinafter "Ms. Taylor"), individually

and for her Complaint against the Defendants, 3B Enterprises, LLC d/b/a

3B Holdings Company, Incorporated, and Home Instead Senior Care (hereinafter

"Home Instead Senior Care"); Rebecca (a.k.a. Becky) J. Beanblossom (hereinafter

"Mrs. Beanblossom"); Brent C. Beanblossom (hereinafter "Mr. Beanblossom"); Kim Little

(hereinafter "Mrs. Little"); Home Instead Senior Care Franchisor (hereinafter "HISC

Franchisor"); Mercy Sacred Heart, Incorporated, d/b/a Sacred Heart Village,

Rehabilitation Agency, and Daybreak Adult Day Center (hereinafter "Sacred Heart Village");

and Kim Thieneman (hereinafter "Ms. Thieneman"), for its discriminatory actions toward her

based on her race, African-American and her age over 40, in violation of the

Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1991,

Title 42 of the United States Code (hereinafter "U.S.C.), Sections 1981 and 2000 et seq.,

the Age Discrimination in Employment Act of 1967 (hereinafter "ADEA"),

the Kentucky Civil Rights Act of 1966, Kentucky Revised Statues (hereinafter "KRS") Chapter

344.00, and the First Amendment to the U.S. Constitution, and for retaliating against her for

engaging in a protected activity hereby states as follows:

## THE PARTIES

1.      The Plaintiff, Antoinette C. Taylor is a resident and citizen of Shelby County in

the Commonwealth of Kentucky (hereinafter "Kentucky"). Ms. Taylor was formerly employed

as a caregiver and certified nursing assistant (hereinafter "CNA") with

Home Instead Senior Care and was formerly assigned and scheduled to work with a client who

resided at Sacred Heart Village, who, at all times relevant to this action, worked within the

geographical environs of the Western District of Kentucky.

2.      At all times referred to in the Complaint, Defendant Home Instead Senior Care is

a for-profit corporation who has conducted business within the geographic boundaries of the

Western District of Kentucky at all times relevant to this action. It is duly registered with the

Office of the Kentucky Secretary of State. Its registered agent for service of process is

Brent C. Beanblossom, 4610 Taylorsville Road, Suite 100, Louisville, Kentucky 40220.

3.      All times referred to in the Complaint, Defendant

Rebecca (a.k.a. Becky) J. Beanblossom was a resident of the Commonwealth of Kentucky, was

duly and presently employed of Home Instead Senior Care, and was acting in her individual and

in her capacity as owner and franchisee operator under HISC Franchisor independently owned

and operated policies and procedures.

4.      All times referred to in the Complaint, Defendant Brent C. Beanblossom was a

resident of the Commonwealth of Kentucky, was duly and presently employed of

Home Instead Senior Care, was acting in his individual and in his capacity as co-owner and

franchisee operator under HISC Franchisor independently owned, and operated policies and

procedures.

5.      All times referred to in the Complaint, Defendant Kim Little was a resident of the

Commonwealth of Kentucky, was duly and presently employed of Home Instead Senior Care,

and was acting in her individual and in her capacity as director of client care and on-call manager

under Home Instead Senior Care standard policies and procedures.

6.      All times referred to in the Complaint, Defendant Home Instead Senior Care

Franchisor is a for-profit corporation and with franchised property located in Louisville,

Kentucky with a principal office in Omaha, Nebraska, was duly and presently acting as

delegator, supplier, and authorizer of Home Instead Senior Care, whereas an implied contract

existed between Mrs. Beanblossom, Mr. Beanblossom, and Home Instead Senior Care to pay a

sum of money for a franchise and the operation of home care services, which Ms. Taylor relied

on the advertisement of their home care services for employment. HISC Franchisor is a supplier

who allowed Home Instead Senior Care, Mrs. Beanblossom, and Mr. Beanblossom to use their

trademark and perform home care services in exchange for franchisor fees. HISC Franchisor is a

joinder party in this Complaint. It is duly registered with the Office of the Nebraska Secretary of

State. Its registered agent for service of process is Michaelle L. Baumert, Husch Blackwell,

1620 Dodge Street, Suite 2100, Omaha, Nebraska 68102.

      7.     At all times referred to in the Complaint, Defendant Sacred Heart Village is a for-

profit corporation who has conducted business within the geographic boundaries of the

Western District of Kentucky at all times relevant to this action. An implied contract existed

between Mrs. Beanblossom, Mr. Beanblossom, and Sacred Heart Village to pay a sum of money

for Ms. Taylor's caregiver services to their client H.R beginning in May 2012, which Ms. Taylor

relied on the job announcement and job description. Ms. Taylor relied on her full-time

employment every Saturday thru Tuesday from 7 p.m. to 7 a.m. for an hourly wage for $9.75 in

exchange for safety supervising Sacred Heart Village's client H.R. Sacred Heart Village is a

joinder party in this Complaint. It is duly registered with the Office of the Kentucky Secretary of

State. Its registered agent for service of process is Kim Thieneman, 2120 Payne Street,

Louisville, Kentucky 40206.

      8.     All times referred to in the Complaint, Defendant Kim Thieneman was a resident

of the Commonwealth of Kentucky, was duly and presently employed of Sacred Heart Village,

and was acting in her individual and in her capacity as executive director under

Sacred Heart Village standard policies and procedures. Ms. Thieneman is a joinder party in this

Complaint.

## JURISDICTION AND VENUE

9.     Plaintiff hereby restates and incorporates the allegations contained in paragraphs 1 – 8 as if fully stated herein.

10.    Jurisdiction is proper in the Western District of Kentucky pursuant to KRS 344.040, et seq., and Title VII of the Civil Rights Act of 1964, §1983 42 U.S.C. §2000e-2000h-4:29 C.F.R. §1600-1610, as amended, which prohibits discrimination basis on color, race, and age over 40; and Age Discrimination in Employment Act of 1967, which prohibits discrimination against individuals over the age of 40. Jurisdiction is further conferred upon this Court by 28 U.S.C. §1331, §1332, and §1343, which provides for original district court jurisdiction over cases presenting questions of federal law under 42 U.S.C. This District has venue pursuant to 42 U.S.C. §2000e-5(f). The jurisdiction of this Court is invoked to secure protection and redress deprivation of rights guaranteed by federal law, which rights provide for injunctive relief and other relief for illegal employment discrimination. The amount in controversy exceeds the jurisdictional limits of this Court.

11.    Jurisdiction over the state law claims is conferred upon this Court by 28 U.S.C. §1367, which provides supplemental jurisdiction over state law claims so related to federal law claims that one case or controversy exists for Article III purposes.

12.    Venue in this district is proper pursuant to 28 U.S.C. §1391.

13.    Plaintiff filed a complaint with the Kentucky Commission on Human Rights (hereinafter "KCHR") charge number 7654-E and the U.S. Equal Employment Opportunity Commission (hereinafter "EEOC") charge number 24G-2012-00169 on July 13, 2012 alleging violations of Title VII of the Civil Rights Act of 1964, as amended of race and age discrimination. Plaintiff still has not heard from the KCHR commissioners for their

recommendations. The KCHR Commissioners have not yet schedule a hearing in accordance

with KRS 344.210(1) or have not issue a final order within one hundred eighty (180) days after

the Plaintiff complaint was filed. Prior to KCHR commissioners issue of a final order, the

Plaintiff may request the withdrawal of the administrative complaint without prejudice to the

rights of the complainant in order to assert the discrimination claim before a state or federal

court, provided that the applicable five-year statute of limitations has not expired. A copy of

Plaintiff's request for withdrawal of charge of discrimination is attached hereto and labeled

Exhibit "A."

## FACTS

14.     Plaintiff hereby restates and incorporates the allegations contained in paragraphs 1

– 13 as if fully stated herein.

15.     Ms. Taylor was a forty-eight-year-old (48) African American woman formerly

employed by Home Instead Senior Care in or about April 2004 as a caregiver and

certified nursing assistant and she was formerly assigned to work at Sacred Heart Village in or

about May 2012 as a caregiver with their client H.R. at all times relevant hereto.

16.     Ms. Taylor exceeded beyond her work performance, repeatedly received

compliments of her work and attendance from her former employer Home Instead Senior Care

and clients and their families, and met Home Instead Senior Care's legitimate performance

expectations.

17.     Ms. Taylor has dedicated more than eight years of her working life to being a

caregiver and certified nursing assistant faithfully to her former employer

Home Instead Senior Care, and their clients and families. Throughout her career, she has

supplemental her education to hone her skills and to advance her career.

18.     Ms. Taylor did not have any verbal or documented disciplinary actions or negative performance reviews.

19.     Ms. Taylor had not received any oral warnings that her full-time employment was in jeopardy.

20.     On April 1, 2011, Ms. Taylor reported her first experience of work place harassment to Mrs. Beanblossom against Home Instead Senior Care employee Christina Reising (hereinafter "Ms. Reising"), human resource assistant. A copy of Ms. Taylor's letter of April 1, 2011 to Mrs. Beanblossom is attached hereto and labeled Exhibit "B."

21.     On March 28, 2012, Ms. Taylor reported per client's family request of their dissatisfaction with Home Instead Senior Care services to Mrs. Little, and then their client's family ended their services contract with Home Instead Senior Care, and then hired a new home health care company to assist their loved one with her home care needs. A copy of Ms. Taylor's letter of March 28, 2012 to Mrs. Little is attached hereto and labeled Exhibit "C."

22.     On June 17, 2012 at approximately 7:49 p.m., Home Instead Senior Care unlawfully suspended and dismissed Ms. Taylor from her work assignment with client H.R. at Sacred Heart Village via telephone.

23.     On or about June 18, 2012, Home Instead Senior Care unlawfully retaliated against Ms. Taylor for reporting a reportable event of potential elder abuse to Ms. Thieneman, which both the state and federal laws required her to do, even though Kentucky adult protective services (hereinafter "APS") did not officially charge anyone with elder abuse from Ms. Taylor blowing the whistle on a Sacred Heart Village employee. A copy of Ms. Taylor's letter of June 18, 2012 to Ms. Thieneman is attached hereto and labeled Exhibit "D."

23.     On or about June 18, 2012, Ms. Reising testified under oath and on record before the Unemployment Insurance (hereinafter "UI") Appeals Branch administrative hearing referee Jeff Page that Ms. Thieneman told Home Instead Senior Care that Ms. Taylor was no longer allowed to work at Sacred Heart Village with client H.R. after she reported said reportable event to Ms. Thieneman in writing, which Ms. Reising testified at one of the five Unemployment Insurance Appeals Branch Administrative Hearings beginning on August 16, 2012 at 8:30 a.m., and thereafter on October 4, 2012 at 2:00 p.m., November 30, 2012 at 10:15 a.m., January 14, 2013 at 10:15 a.m., and February 22, 2013 at 1:00 p.m. A copy of Ms. Taylor's letter of June 18, 2012 to Ms. Thieneman is attached hereto and labeled Exhibit "D."

24.     On or about June 19, 2012, Home Instead Senior Care intentionally and verbally threatened to discharge Ms. Taylor's employment for blowing the whistle to Ms. Thieneman and APS via telephone.

25.     On or about June 20, 2012, Home Instead Senior Care intentionally and pre-textually discriminated against Ms. Taylor because of her race, African-American and her age over 40, and unlawfully terminated her employment as evident by the termination letter of June 20, 2012 in written form, which Ms. Taylor received via certified mailing on June 25, 2012 at approximately 9:00 a.m. at her home in Shelby County, Kentucky. A copy of Home Instead Senior Care's letter of June 20, 2012 to Ms. Taylor is attached hereto and labeled Exhibit "E."

26.     On or about July 6, 2012, Ms. Taylor submitted via facsimile and certificate of mailing her rebuttal to Home Instead Senior Care's termination letter of June 20, 2012 to Ms. Taylor to the UI Appeals Branch. A copy of Ms. Taylor's rebuttal of July 6, 2012 to Home Instead Senior Care's letter of June 20, 2012 to Ms. Taylor is attached hereto and labeled Exhibit "F."

27.     Home Instead Senior Care alleged "reasons" for suspending and discharging Ms. Taylor is pretexual at best. Ms. Taylor performed her job duties beyond Home Instead Senior Care expected expectations, was always on time for work, and consistently received glowing praises and compliments from co-workers, Home Instead Senior Care, and her clients and their families.

## FIRST CAUSE OF ACTION FOR
## COUNT I – INTENTIONAL RACE DISCRIMINATION

28.     Plaintiff hereby restates and incorporates the allegations contained in paragraphs 1 – 27 as if fully stated herein.

29.     Defendants' willfully and intentionally suspended and dismissed Ms. Taylor from her work assignment solely on the basis of her race, African-American, and they denied Ms. Taylor the same terms and conditions as those afforded to her similarly situated Caucasian employees.

30.     Defendants' willfully and intentionally terminated Ms. Taylor from her employment solely based on her race, African-American, which was the motivating factor in deciding, and did make a difference in their decision, not to continue Ms. Taylor's employment, instead they treated her differently from other similarly situated Caucasian employees.

31.     Defendants' actions were willfully and intentionally in violation of the Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1991, Title 42 of the U.S.C., §1981 and §2000 et seq., the Kentucky Civil Rights Act of 1966, KRS Chapter 344.00, and the First Amendment to the U.S. Constitution.

32.     Defendants' actions were willful, intentional, and done with reckless indifference disregard of Ms. Taylor's civil rights. Defendants simply did not care and blatantly disregarded Ms. Taylor's civil rights and liberties.

33.     Ms. Taylor has suffered mental anguish, emotional pain and distress, and humiliation and embarrassment as a result and proximate of Defendants' unlawful actions.

## SECOND CAUSE OF ACTION FOR
## COUNT II – AGE DISCRIMINATION

34.     Plaintiff hereby restates and incorporates the allegations contained in paragraphs 1 – 33 as if fully stated herein.

35.     Defendants' willfully and intentionally suspended and dismissed Ms. Taylor from her work assignment solely on the basis of her age over 40, forty-eight (48) years-old and they denied Ms. Taylor the same terms and conditions as those afforded to her similarly situated younger employees.

36.     Defendants' willfully and intentionally terminated Ms. Taylor from her employment solely based on her age over 40, forty-eight (48) years-old which was the motivating factor in deciding, and did make a difference in their decision, not to continue Ms. Taylor's employment, instead they treated her differently from other similarly situated younger employees.

37.     Defendants' actions were willfully and intentionally in violation of the Age Discrimination in Employment Act of 1967, the Kentucky Civil Rights Act of 1966, KRS 344.040 et seq., and the First Amendment to the U.S. Constitution.

38.     Defendants' actions were willful, intentional, and done with reckless indifference disregard of Ms. Taylor's civil rights. Defendants simply did not care and blatantly disregarded Ms. Taylor's civil rights and liberties.

39.     Ms. Taylor has suffered mental anguish, emotional pain and distress, and humiliation and embarrassment as a result and proximate of Defendants' unlawful actions.

### THIRD CAUSE OF ACTION FOR
### COUNT III – NEGLIGENCE

40.     Plaintiff hereby restates and incorporates the allegations contained in paragraphs 1 – 39 as if fully stated herein.

41.     Home Instead Senior Care, Mrs. Beanblossom, and Mr. Beanblossom negligently and carelessly hired Ms. Reising who lacked the necessary training, credentials, and experiences as a Human Resource Assistant. In a short period, Ms. Reising was promoted as the Human Resource Manager. Ms. Reising clearly lacked human resource management experiences as evident by Ms. Reising attempted to block Ms. Taylor re-activating her employment status and her different treatment of African-American employees than similar situated Caucasian employees. Ms. Reising shared with Ms. Taylor and other employees during an orientation training that she lacked home health care experience with older adults, and Mrs. Beanblossom had to teach her about home health care with older adults. As a result and proximate of Home Instead Senior Care, Mrs. Beanblossom, and Mr. Beanblossom negligent hiring of Ms. Reising, Ms. Taylor has suffered harassment directly by Ms. Reising, discrimination, and retaliation.

42.     Prior to Home Instead Senior Care, Mrs. Beanblossom, and Mr. Beanblossom hiring Ms. Reising, Ms. Reising was formerly employed with TLC Supported Living Services

(hereinafter "TLC") of both Kentucky and Indiana for approximately eight years. Ms. Reising was connected with TLC when they received substantiated abuse and neglect of mentally challenge adults charges, and then eventually lost their state funding and therefore shortly went out of business. Ms. Taylor briefly worked with Ms. Reising at TLC and Ms. Taylor recalled that Ms. Reising treated her differently than the other Caucasian managers solely because of Ms. Taylor's race, African-American. As a result and proximate of Home Instead Senior Care, Mrs. Beanblossom, and Mr. Beanblossom negligent hiring of Ms. Reising, Ms. Taylor was injured for alleging sleeping on the job based on hearsay, and Ms. Reising intentionally, grossly, and recklessly did not request a statement from Ms. Taylor in order to get her side of the story during her investigation of said false allegations of Ms. Taylor sleeping on the job.

43.     Home Instead Senior Care, Mrs. Beanblossom, and Mr. Beanblossom carelessly and negligently failed to provide proper supervision of Ms. Reising. Ms. Reising willfully and intentionally fabricated false allegations about Ms. Taylor such as her violating client's confidentiality, abandoning client H.R. at Sacred Heart Village, and leaving client H.R. in soiled briefs for four hours without her having firsthand knowledge and facts. At the Unemployment Administrative Appeals Hearing referenced to in this Complaint, Ms. Reising testified under oath and on record before referee Jeff Page that she did not have firsthand knowledge to the false allegations that she had recently accused Ms. Taylor of in her letter of June 20, 2012 in effort to terminate Ms. Taylor's employment with Home Instead Senior Care. Because of Ms. Reising's outrageous behaviors and negligent actions in blatant disregard to Ms. Taylor's civil rights, Ms. Taylor suffered mental anguish, emotional pain and suffering, and humiliation and embarrassment.

44.     Home Instead Senior Care, Mrs. Beanblossom, and Mr. Beanblossom willfully and intentionally breached their duty of care owed to Ms. Taylor as a faithful and committed former employee of Home Instead Senior Care for the past eight years and as a caregiver at her former assignment at Sacred Heart Village. As a result and proximate of Home Instead Senior Care, Mrs. Beanblossom, and Mr. Beanblossom negligent supervision of Ms. Reising, Ms. Taylor has suffered a loss of employment, health, and medical benefits, and loss of income.

45.     Home Instead Senior Care, Mrs. Beanblossom, and Mr. Beanblossom carelessly and recklessly failed to provide Ms. Taylor training with working with suicidal clients such as client H.R. As a result and proximate of Home Instead Senior Care, Mrs. Beanblossom, and Mr. Beanblossom negligent training, Ms. Taylor suffered humiliation and embarrassment, and emotional distress.

46.     Home Instead Senior Care, Mrs. Beanblossom, and Mr. Beanblossom carelessly and recklessly failed to inform Ms. Taylor of client H.R.'s medical history and his contagious disease. As a result and proximate of Mrs. Beanblossom and Mr. Beanblossom negligence, Ms. Taylor's health was compromised and she was not working in a safe environment.

47.     Home Instead Senior Care owed Ms. Taylor a duty of care as a former employee.

48.     Home Instead Senior Care breached their duty of care by hiring Ms. Reising who was unqualified as a human resource assistant and human resource manger and lacked the proper experience to perform her task.

49.     Ms. Taylor was injured and suffered loss of income, loss of employment, and loss of health and medical benefits as a result Defendants' actions.

50.    Ms. Taylor suffered emotional pain and suffering, mental anguish, and humiliation as a result of Home Instead Senior Care breach of duty to care.

**FOURTH CAUSE OF ACTION FOR**
**COUNT IV – WRONGFUL DISCHARGE**

51.    Plaintiff hereby restates and incorporates the allegations contained in paragraphs 1 – 50 as if fully stated herein.

52.    Defendants' retaliated against Ms. Taylor solely because of her race, African-American and age over 40, for reporting a reportable event of potential elder abuse to her client H.R., which she had witnessed and reported to Ms. Thienenman and APS, instead Defendants insisted that Ms. Taylor should not have had reported that said event in efforts to cover it up and for her to have had violated both state and federal mandatory reporting laws.

53.    Ms. Taylor refused to violate the state and federal mandatory reporting laws and the Defendants terminated her employment in three days without a good cause. Ms. Taylor had been formerly employed with Home Instead Senior Care for eight years.

54.    As a result of Defendants' acts, Ms. Taylor is entitled to recover damages from Home Instead Senior Care in an amount to be determined by a jury.

**FIFTH CAUSE OF ACTION FOR**
**COUNT V – INTENTIONAL INFLICTION OF**
**EMOTIONAL DISTRESS/OUTRAGEOUS CONDUCT**

55.    Plaintiff hereby restates and incorporates the allegations contained in paragraphs 1 – 54 as if fully stated herein.

56.    The Defendants willfully and intentionally interfered with Ms. Taylor's civil rights and liberties under the Title VII of Civil Rights of 1964, as amended, the Civil Rights Act of 1991, the Title 42 of the U.S.C., the

Age Discrimination in Employment Act of 1967, the Kentucky Civil Rights Act of 1966, KRS 344.040 et seq., and the First Amendment to the U.S. Constitution.

57.     The Defendants willfully and intentionally suspended and dismissed Ms. Taylor from her work assignment and terminated her employment solely because of her race, African-American and Ms. Taylor's age over forty (40), forty-eight (48) years old.

58.     The Defendants willfully and intentionally imposed different terms and conditions and treated Ms. Taylor differently than other similar situated Caucasians and younger employees because of her race, African-American and her age over forty (40).

59.     The Defendants intended to and did inflict severe emotional distress upon Ms. Taylor by engaging in actions that intended to harass, belittle, confuse, mislead, and threaten Ms. Taylor, the purpose of which was to intimidate and coerce Ms. Taylor into leaving her employment with Home Instead Senior Care.

60.     The Defendants attempted to take advantage of Ms. Taylor reasonably unable to find another employer in a short period, unable to pay for her monthly bills, unable to protect her interest because of an assumed ignorance and an inability to understand the legal issues and factors involved, and therefore acted with unconscionable intent.

61.     The actions of Home Instead Senior Care, acting by and through its agents, franchisor, and employees, including Ms. Thieneman and Sacred Heart Village, acted with the intent to cause, or with reckless disregard for the probability of causing Ms. Taylor to suffer severe emotional distress.

62.     The Defendants are liable to Ms. Taylor for compensatory damages arising from severe emotional distress, in an amount to be determined by a jury.

63.     As a direct result of the Defendants' failure Ms. Taylor has suffered from lasting embarrassment, humiliation, and mental anguish.

## SIXTH CAUSE OF ACTION FOR
## COUNT VI – CONSPIRACY

64.     Plaintiff hereby restates and incorporates the allegations contained in paragraphs 1 – 63 as if fully stated herein.

65.     Ms. Reising testified under oath and on record before referee Jeff Page at the UI Branch Appeals Administrative Hearing as referenced in this Complainant that Home Instead Senior Care employee, caregiver Morgan Holmes (hereinafter "Ms. Holmes") overheard that between two or more Sacred Heart Village employees were willfully and intentionally agreeing to carry out an act that is unlawful toward Ms. Taylor such as to get her fired if she reported them for elder abuse.

66.     As a result of Sacred Heart Village employees' conspiracy, Ms. Taylor lost her work assignment with her client H.R., and Ms. Reising reported that Ms. Thieneman said that Ms. Taylor could never work at Sacred Heart Village ever again.

67.     Ms. Thieneman and Sacred Heart Village owed a duty of care to Ms. Taylor to warn and protect in order to keep her safe while she cared for their client H.R. as a caregiver.

68.     Ms. Thieneman and Sacred Heart Village deprived Ms. Taylor of her legal rights.

69.     Sacred Heart Village employees intentionally and maliciously intended to cause Ms. Taylor harm when the meeting of their minds came together and agreed to cause Ms. Taylor to loss her work assignment at Sacred Heart Village.

70.     As a result of Sacred Heart Village employees' actions, Ms. Taylor suffered humiliation, embarrassment, and emotional distress.

## SEVENTH CAUSE OF ACTION FOR
## COUNT VII – BREACH OF THE COVENANT OF
## GOOD FAITH AND FAIR DEALING

71.     Plaintiff hereby restates and incorporates the allegations contained in paragraphs 1 – 70 as if fully stated herein.

72.     Ms. Taylor is a resident of the City of Shelbyville, Shelby County, Kentucky.

73.     Home Instead Senior Care is a for-profit corporation organized and existing under the laws of Kentucky and has its principal place of business in the City of Louisville, Jefferson County, Kentucky. Home Instead Senior Care is engaged in the business of providing home health care services to older adults within Kentucky and Indiana.

74.     In or about April 2004, and thereafter, Ms. Taylor and Home Instead Senior Care entered into an oral contract of employment under which Ms. Taylor agreed to perform and assume the position of caregiver and certified nursing assistant. Home Instead Senior Care agreed to pay Ms. Taylor a salary of $9.75 per hour and to provide the following fringe benefits: health, dental, and insurance plans, company paid short term and long-term disability insurance, and life & personal accident insurance, and retirement savings plan. Ms. Taylor further alleges that that there was an implied agreement in the employment contract as a matter of law for a covenant of good faith and fair dealing that neither party would do anything to injure the other in obtaining the fruits and benefits of the agreement. A copy of Ms. Taylor's pay increase letter of January 24, 2011is attached hereto and labeled Exhibit "G."

75.     Thereafter, Ms. Taylor entered into the performance of her employment contract and, at all times mentioned in this Complaint, performed all of the terms and conditions of the contract on her part to be performed in a competent and professional manner.

76.    In her position as a caregiver and CNA, Ms. Taylor was under the immediate supervision and direction of both Mrs. Beanblossom and her Home Instead Senior Care staff who held the positions of owner and employee of Home Instead Senior Care, and Her Home Instead Senior Care staff held the positions, which included director of client care and on-call manager, human resource manager, schedulers, and caregivers acted immediately before Ms. Taylor, as they assumed those duties of their positions.

77.    In carrying out her duties as a caregiver and CNA, Ms. Taylor discovered that on or about April 1, 2011, and at various times thereafter, both Mrs. Beanblossom and her Home Instead Senior Care staff, in her positions as owner and employee and her staff positions as director of client care and on-call manager, human resource manager, schedulers, and caregivers, on behalf of Home Instead Senior Care, had engaged in the following unlawful activities: harassed Ms. Taylor in the work place, participated in disparate treatment of suspended and discharged Ms. Taylor prior to protected conduct, failed to obtain a statement from Ms. Taylor alleging her sleeping on the job, retaliated against Ms. Taylor for reporting a reportable event of potential elder abuse, failed to uphold the Equal Employment Opportunity as it applies to recruitment, promotions, discipline and discharge, failed to provide Ms. Taylor usage of the established Fair Treatment procedure in a timely manner, failed to abide in a manner in consistent with Kentucky mandatory reporting laws, KRS Chapter 344.00, and disparate of treatment of similarly situated Caucasian and younger employees. Ms. Taylor further alleges that such acts constituted violation of Title VII of Civil Rights of 1964, as amended, the Civil Rights Act of 1991, the Title 42 of the U.S.C., the Age Discrimination in Employment Act of 1967, the Kentucky Civil Rights Act of 1966,

KRS 344.010 et seq., KRS 344.040 et seq., and the First Amendment to the U.S. Constitution, and common laws of Kentucky.

78.     Home Instead Senior Care acts constituted violations of the common laws of Kentucky and subjected Ms. Taylor personally to unfair treatment, and a hostile and unsafe work environment for such violations. Ms. Taylor, at that time and at all subsequent times, continued to perform her duties in a professional manner and reported violations of such acts.

79.     On or about June 17, 2012, Home Instead Senior Care suspended and discharged Ms. Taylor from her work assignment with client H.R. as a caregiver and CNA at Sacred Heart Village for alleging sleeping on the job based on hearsay. Ms. Reising testified under oath and on record before referee Jeff Page during a UI Branch Appeal Administrative Hearing, which Ms. Thieneman told her that Ms. Taylor could never return to work at Sacred Heart Village again.

80.     On or about June 19, 2012, Home Instead Senior Care verbally and unlawfully terminated Ms. Taylor employment via telephone.

81.     On or about June 20, 2021, Home Instead Senior Care willfully and intentionally fabricated seven false allegations against Ms. Taylor, and then they unlawfully terminated Ms. Taylor employment via certified mailing, which Ms. Taylor did receive on June 25, 2012 at approximately 9:00 a.m. based on hearsay, assumptions, and no firsthand knowledge.

82.     Ms. Taylor further alleges that her discharge was without just cause, unlawful, and in retaliation for Ms. Taylor's repeatedly reporting ongoing concerns, violations and acts described in paragraph 77 above, which her discharge violated the public policy of Kentucky as expressed of Title VII of Civil Rights of 1964, as amended, the Civil Rights Act of 1991, the Title 42 of the U.S.C., the

Age Discrimination in Employment Act of 1967, the Kentucky Civil Rights Act of 1966, KRS 344.010 et seq., KRS 344.040 et seq., and the First Amendment to the U.S. Constitution.

83.     In discharging Ms. Taylor, Defendants, with full knowledge of Ms. Taylor's employment contract and its advantages, unlawfully conspired to deprive Ms. Taylor of the benefits of her employment contract with Home Instead Senior Care and job assignment with Sacred Heart Village, which was induced thereby to fire Ms. Taylor from her position as caregiver and CNA. Such firing was in retaliation for Ms. Taylor advocating for her client H.R. who resides at Sacred Heart Village from potential elder abuse and for Ms. Taylor standing up for her rights and reporting violations of the common laws of Kentucky, and, furthermore, breached the covenant of good faith and fair dealing, which is implied in Ms. Taylor's employment contract.

84.     In carrying out their conspiracy to have Ms. Taylor wrongfully discharged, Defendants were not only acting on behalf of Home Instead Senior Care and Sacred Heart Village, but each defendant was also acting on his or her own behalf for his or her advantage and benefit in that their positions with Home Instead Senior Care and Sacred Heart Village were secured and they would continue to benefit personally and financially from the continuing violations of the common laws of Kentucky by reason of the fact that the business of Home Instead Senior Care and Sacred Heart Village were thereby increased resulting in additional bonuses, and stock option offers to each individual defendant.

85.     Ms. Taylor further alleges that the acts of the Defendants and each of them as alleged in this Complaint were carried out intentionally, oppressively, maliciously, and abusively for the purpose of vexing, annoying, and harassing Ms. Taylor and in retaliation for her making complaints of violations to the common laws of Kentucky.

86.     As a proximate result of the acts of the Defendants and each of them, Ms. Taylor continues to be unemployed from June 17, 2012 to date, and thereby severed a loss of earnings and fringe benefits exceeding in the amount for $23,720.00.

87.     As a proximate result of the acts of the Defendants and each of them, Ms. Taylor continues her participation in the Unemployment Insurance Appeals Branch Administrative Hearings beginning on August 16, 2012 at 8:30 a.m., and thereafter on October 4, 2012 at 2:00 p.m., November 30, 2012 at 10:15 a.m., January 14, 2013 at 10:15 a.m., and February 22, 2013 at 1:00 p.m. Ms. Taylor has not received income for eight months, except for $200 for food assistance. Ms. Taylor is scheduled to participate in another UI Appeals Branch Administrative Hearing prior to referee Jeff Page. Ms. Reising who represented Home Instead Senior Care at the UI Appeals Branch Administrative Hearings testified that she did not have firsthand knowledge to the seven false allegations alleging that Ms. Taylor violated Home Instead Senior Care policies. Ms. Reising's witness, Robin Lovett (hereinafter "Ms. Lovett"), who is currently employed by Home Instead Senior Care as a caregiver. Ms. Lovett testified under oath and on record before referee Jeff Page that Ms. Taylor did not provide her any confidential information about her client H.R. as Ms. Reising claimed in her letter of June 20, 2012 terminating Ms. Taylor's employment with Home Instead Senior Care and her work assignment at Sacred Heart Village. Ms. Reising decided not to call Ms. Thieneman as her witness during the UI Appeals Branch Administrative Hearings. A copy of Ms. Taylor's UI Appeals Branch Administrative Hearing Order of February 11, 2013 is attached hereto and labeled Exhibit "H."

88.     On June 17, 2012 and thereafter, Ms. Taylor continues to seek and secure full-time employment. Ms. Taylor has suffered damages exceeding in the amount for $93,600.00 for lost of future wages and fringe benefits value.

89.     As a further proximate result of Defendants' acts and each of them, Ms. Taylor suffered severe mental and emotional distress, shame and humiliation which resulted in a condition known as very high blood pressure and high anxiety for which Ms. Taylor was treated medically, including regular doctor's visits and one emergency room visit. Ms. Taylor thereby incurred expenses for doctor's visits and one emergency room visit for treatment exceeding in the amount for $6,000.00 and suffered general damages exceeding in the amount for $800,000.00.

90.     The acts of the Defendants and each of them in wrongfully discharging Ms. Taylor was done maliciously and oppressively, and, therefore, by way of punishing Defendants for such as, and to deter future misconduct of a similar nature, Ms. Taylor seeks an award of 1.2 million for punitive damages against each Defendant individually.

## EIGHTH CAUSE OF ACTION FOR
## COUNT VIII – RETALIATION FOR REPORTING
## ELDER ABUSE AND UNSAFE CONDITIONS

91.     Plaintiff hereby restates and incorporates the allegations contained in paragraphs 1 – 90 as if fully stated herein.

92.     Defendants' retaliated against Ms. Taylor solely because of her race, African-American and age over 40, for reporting a reportable event of potential elder abuse to her client H.R. who is bed bound, which she had witnessed his conversation with a Sacred Heart Village CNA employee, who recently started working as a CNA in the nursing field. Ms. Taylor

advocated for her client H.R. by reporting his comments and her concerns immediately and directly to Home Instead Senior Care, Ms. Thienenman, and APS, instead Defendants discharged Ms. Taylor's employment on seven false allegations alleged against Ms. Taylor.

93.    Defendants further insisted that Ms. Taylor should not have had reported that said reportable event in their efforts to cover it up and for her to have had violated both state and federal mandatory reporting laws. Defendants referred to Ms. Taylor's letter of June 18, 2012 to Ms. Thienenman as a legally threatening letter based on Ms. Reising's assumptions. At the UI Branch Appeals Administrative Hearing, Ms. Reising testified under oath and on record before referee Jeff Page, that Ms. Taylor's letter to Ms. Thienenman was a legally threatening letter and alleged that Ms. Taylor violated Home Instead Senior Care policy. Ms. Reising did not have firsthand knowledge about Ms. Taylor's letter of June 18, 2012 and Ms. Reising decided not to call Ms. Thienenman to testify about Ms. Taylor's letter of June 18, 2012 reporting reportable events of potential elder abuse to her client H.R. who is not able to advocate for himself.

94.    Ms. Taylor refused to violate the state and federal mandatory reporting laws, and therefore the Defendants terminated her employment in three days without a good cause. Ms. Taylor had been formerly employed with Home Instead Senior Care for eight years.

95.    On June 19, 2012, the Defendants verbally threatened via telephone to discharge Ms. Taylor as an employee of Home Instead Senior Care and as a caregiver working with Sacred Heart Village client H.R. for blowing the whistle on potential elder abuse to her client H.R. who resided at Sacred Heart Village.

96.    As a result of Defendants' acts, Ms. Taylor is entitled to recover damages from Home Instead Senior Care in an amount to be determined by a jury.

## RELIEF REQUESTED

**WHEREFORE**, the Plaintiff, Antoinette C. Taylor prays that this Court and demands Judgment against the Defendants and each of them individually in an amount, which will compensate her for damages caused by the Defendants' wrongful actions:

1.      Declare Defendants Home Instead Senior Care, Mrs. Beanblossom, Mr. Beanblosso, Mrs. Little, HISC Franchisor, Sacred Heart Village, and Ms. Thieneman's conduct in violation of her civil rights and liberties under Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1991, Title 42 of the U.S.Code§1981 and §2000 et seq., the ADEA Act of 1967, the Kentucky Civil Rights Act of 1966, KRS Chapter 344.00, the First Amendment to the U.S. Constitution; common law tort claims;

2.      Award Antoinette C. Taylor substantial actual, consequential damages, emotional distress damages, and compensatory damages including, but not limited to lost wages, past and future; and damages for embarrassment, humiliation, personal indignity; past and future medical expenses; and apprehension about her future, emotional pain and distress, and mental anguish, which the Defendants caused Ms. Taylor by their discriminatory acts toward her, in amounts to be precisely determined by a jury of her peers for her economic and other losses;

3.      Award her Liquidated damages;

4.      Pre-judgment and post-judgment interest at the maximum allowable rate;

5.      Trial by jury of all issues so triable;

6.      Award her recovery costs and labor, including reasonable attorney fees;

7.      Leave to amend this Complaint as proof develops;

8.      Permanently enjoin Defendants from engaging in any employment policy or practice that discriminates against any employee based on his/her race and age;

9.    Award her punitive damages against the Defendants for the serious wrongs they committed against her, alleged hereinabove; and

10.    All other relief to which she may be entitled.

Respectfully submitted,

**DATED:**    February 26, 2013    By:

Antoinette C. Taylor, Plaintiff in *Pro Se*
1082 Dotland Circle
Shelbyville, Kentucky 40065
502.437.5375

*Plaintiff demands trial by jury.*

26 of 26