UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

ANTOINETTE C. TAYLOR                                            PLAINTIFF

v.                                              CIVIL ACTION NO. 3:13-CV-259-S

3B ENTERPRISES, LLC, et al.                                  DEFENDANTS

**MEMORANDUM OPINION**

This matter is before the Court on motion of Defendants 3B Enterprises, LLC, *et alia*, for judgment on the pleadings, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Defendants argue the allegations of employment discrimination are implausible or the claims are otherwise legally flawed and, therefore, fail to state a claim upon which relief can be granted. (DNs 33, 46). In response to this motion, Plaintiff, Antoinette C. Taylor, *pro se,* filed four motions for leave to amend the complaint. The Court ordered Plaintiff to restate all allegations in one pleading, which is now before the Court in Plaintiff's motion for leave to file a Fifth Amended Complaint, pursuant to Rule 15(a)(2). (DN 82, 99). Defendants oppose the motion as futile because, they argue, the seventy-four-page amended complaint does not cure the deficiencies in the original complaint and because the additional claims and allegations also fail to state a claim. (DN 95). In opposition to dismissal, Plaintiff argues all her claims are plausible and satisfy the federal standard for notice pleading. (DN 40, 53, 56). For the reasons set forth below, the Court will deny leave to amend, because all allegations fail to state a claim upon which relief can be granted, and dismiss the action.

I.

Federal courts freely grant leave to amend a pleading "when justice so requires," Fed. R. Civ. P. 15(a)(2), to promote review of cases on their merits rather than on technicalities. *Cooper*

*v. American Employers' Ins. Co.*, 296 F.2d 303, 306 (6th Cir. 1961). Denial of leave to amend is, nevertheless, appropriate if the amendment would be futile because it could not withstand a motion to dismiss under Rule 12. *Miller v. Champion Ent., Inc.*, 346 F.3d 660, 671, 690 (6th Cir. 2003).

When evaluating whether a complaint fails to state a claim upon which relief can be granted, Fed. R. Civ. P. 12(b)(6), the Court must determine whether the complaint alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.,* (citing *Twombly*, 550 U.S. at 556). Although the complaint need not contain "detailed factual allegations [under Rule 8(a)(2)], a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' [under *Conley v. Gibson*, 355 U.S. 41 (1957)] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted).

This "plausibility" standard, as articulated recently by the Supreme Court of the United States in *Twombly* and *Iqbal,* applies to causation in discrimination claims. *Keys v. Humana, Inc.*, 684 F.3d 605, 610 (6th Cir. 2012)(citing *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 612-13 (6th Cir. 2012) (affirming dismissal of Fair Housing Act claim where alleged facts did not support plausible inference of intentional discrimination); and *Pedreira v. Kentucky Baptist Homes for Children, Inc.*, 579 F.3d 722, 728 (6th Cir. 2009) (affirming dismissal of religious discrimination claim where plaintiff failed to allege facts plausibly linking her termination to religious beliefs)). In *Keys*, the Sixth Circuit explained:

> [A]lthough the … [c]omplaint need not present "detailed factual allegations," it must allege sufficient "factual content" from which a court, informed by its "judicial experience and common sense," could "draw the reasonable inference," *Iqbal*, 556 U.S. at 578, 679, that [the employer] "discriminate[d] against [the plaintiff] with respect to [her] compensation, terms, conditions, or privileges of employment, *because of* [her] race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1)(emphasis added); *see Barrett v. Whirlpool Corp.*, 556 F.3d 502, 512 (6th Cir. 2009) ("[W]e review § 1981 claims under the same standard as Title VII claims."). According to the Supreme Court, "plausibility" occupies that wide space between "possibility" and "probability." *Iqbal*, 556 U.S. at 678. If a reasonable court can draw the necessary inference from the factual material stated in the complaint, the plausibility standard has been satisfied.

*Id.*

Federal courts hold *pro se* pleadings to a less stringent standard than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991); *Burton v. Jones*, 321 F.3d 569 (6th Cir. 2003). The district court better serves "substantial justice" by examining the "thrust, not just the text," of *pro se* litigants' allegations. *Burton*, 321 F.3d 573-74.

## II.

Plaintiff claims she was discharged from employment, on or about June 20, 2012, on the basis of her age and race, being 49 years of age and an African-American.[1] For nearly eight years, Plaintiff worked as a caregiver and certified nurse assistant for Defendant, 3B Enterprises, LLC.[2] 3B is an operator of a home health care service called, Home Instead Senior Care. In addition to naming 3B as a defendant, Plaintiff names three individuals as defendants: 3B's principals/owners, Brent Beanblossom and Rebecca Beanblossom, as well as a senior manager,

---

[1] Fifth Am. Compl. ¶¶ 70-73, 137, 150 (ECF No. 82).
[2] *Id.* ¶¶ 3, 48.

Client Care Director, Kim Little.[3] Plaintiff alleges she met her employer's performance expectations and received awards and recognition for her work.[4] However, Plaintiff was ultimately terminated, she alleges, "based on workplace inadmissible rumors, gossip, and hearsay alleging that [Plaintiff] was sleeping on the job [on the night in question, June 16-17, 2012]… ."[5] Plaintiff's employer immediately relieved Plaintiff from her work assignment, via telephone conversation with Ms. Beanblossom on June 19, 2012, and three days later, terminated Plaintiff's employment.[6]

**Charge of Discrimination**

Plaintiff filed a formal charge of discrimination with the Equal Employment Opportunity Commission and Kentucky Commission on Human Rights, a copy of which is attached to Defendants' response memorandum.[7] In it, Plaintiff complains of discriminatory discharge on the basis of age and race, on or about June 25, 2012, against Home Instead Senior Care.

**Disparate Treatment**

Plaintiff asserts claims of disparate treatment as a result of her employer's decisions to depart from an incremental disciplinary policy afforded Caucasian employees and, second, to terminate her employment. Plaintiff attaches to the amended complaint a letter, dated June 20, 2012, in which Human Resources Manager, Christine Reising, notifies Plaintiff of the termination and describes: 1) a report from a fellow 3B employee, Ms. Lovett, concerning Plaintiff's care of a client, who resided in a senior facility, Mercy Sacred Heart Village, on the night in question; 2) the communications between Plaintiff and Ms. Beanblossom, Ms. Little, and others; 3) the employer's investigation beginning June 18th; and 4) the employer's findings

---

[3] *Id.* ¶¶ 55, 72, 85, Exhibit A.
[4] *Id.* ¶¶ 3-4, 95.
[5] *Id.* ¶¶ 8, 138.
[6] *Id.* ¶¶ 73, 138.
[7] Exhibit A, Response to Mot. for Leave to File Fifth Am. Compl. (ECF No. 95).

and the stated grounds for discharge, including seven policy infractions.[8] These policies are set forth in Plaintiff's employee handbook, which is also attached to the complaint.[9] Also, Ms. Reising's letter contains a copy of Plaintiff's letter, via facsimile, dated June 18, 2012, to a Sacred Heart administrator, in which Plaintiff notifies them that she believed a Sacred Heart caregiver had falsely reported her sleeping on the job in retaliation for Plaintiff's report of June 17, 2012, (at 5:10 a.m.) against Sacred Heart staff for treating the patient in a "rough and fast" manner.[10]

Following termination and in response to Ms. Reising's letter, Plaintiff denied sleeping on the job and other infractions; disputed any tension existed between herself and Sacred Heart personnel; and vigorously disputed the content of the communications and particulars set forth in the June 20th letter, all of which is, in an attachment to the complaint, set out in Plaintiff's five-page, single-spaced letter, dated July 6, 2012, to the Unemployment Insurance Appeals Branch.[11]

In her affidavit attached to the Fifth Amended Complaint, Plaintiff states she believes that 3B's stated grounds for terminating her employment are pretext.[12] Plaintiff further alleges that before termination, she was denied any warning procedure, progressive disciplinary measures, and appeal process; that after the investigation, she was denied any ability to refute hearsay she was sleeping on the job; and that such denials constituted a departure from normal procedure

---

[8] Plaintiff alleges, "The seven (7) false allegations … were sleeping on the job; sharing confidential [patient] information …; abandoning her client; witnessing physical abuse to her client; failing to report [same] immediately; writing threatening letters; witnessing her client in soiled briefs; behaving unprofessionally … ." Fifth Am. Comp. ¶ 141. Plaintiff references Exhibit E to the Fifth Amended Complaint (ECF No. 82), and there is a cover sheet titled Exhibit E, but no actual exhibit is attached. Instead, the exhibit is attached to the original complaint (ECF No. 1) and is also titled Exhibit E.
[9] Exhibit B, Fifth Am. Compl.
[10] Exhibit E, *supra* note 8, at 2.
[11] Exhibit F, original complaint (ECF No. 1). *See also* Fifth Am. Compl. ¶ 66, in which Plaintiff identifies those persons who informed against her as Ms. Reising, Ms. Young, Ms. Stillwell, and Ms. Little, whereas Defendants apparently contend a co-worker, Ms. Lovett, reported Plaintiff sleeping on the job in addition to other infractions.
[12] *Id.*, Pla's Affidavit.

afforded to Caucasian employees.[13] Plaintiff alleges she was abruptly discharged and again not given an opportunity to submit a personal statement and give her side of the story, as a result of Ms. Beanblossom's wrongdoing and failure to stop Ms. Reising's discriminatory conduct.[14]

Plaintiff alleges she was treated differently than the Caucasian caregivers and certified nursing assistant and employees. Plaintiff's alleges "on information and belief" that twenty-two different "Comparators" violated various policies, and that Comparator No. 1, in particular, was accused of sleeping on the job. Plaintiff describes these "comparators" as "unknown" individuals, but contends none of them was terminated despite policy infractions.[15]

Plaintiff is unable to name any employee, who received leniency when alleged to have been sleeping on shift, much less, alleged to have had additional performance deficiencies.[16] Two fellow employees, whom Plaintiff identifies by name, are Ms. Reising (non-party) and Ms. Little (the party-defendant). Each holds management level responsibilities.[17] These individuals provide examples, Plaintiff contends, of disparate treatment.[18]

Plaintiff does not dispute that she refused to discuss, in person, her employer's investigation of the Sacred Heart incident, as stated in Ms. Reising's letter.[19] Plaintiff does not

---

[13] *Id.* ¶ 135.
[14] *Id.* ¶ 63.
[15] *Id.* ¶ 170 *et seq.*
[16] *Id.* ¶ 19. Plaintiff alleges a Caucasian employee, Ms. Wilder, did not get suspended or discharged for violating the company's workplace policy of treating African-American employees disrespectfully, but provides no other information.
[17] *Id.* ¶¶ 58-60. Plaintiff alleges Ms. Beanblossom gave preferential treatment to Ms. Reising by twice promoting her in a very short period despite Ms. Reising having "fewer qualifications" than Plaintiff based on unobtained personnel records. Plaintiff alleges Ms. Reising violated work policy by being disrespectful or using offensive language or being physically aggressive or inappropriate. *Id.* ¶ 65.
[18] *See id.* ¶ 68. Plaintiff alleges Ms. Beanblossom treated Defendant Little more favorably than Plaintiff, as evidenced by her letter, dated March 28, 2012, to Defendant Little concerning the night-time care of client Ms. A.A. Plaintiff references this letter as Exhibit F, (ECF No. 82). The exhibit appears, however, in the record as Exhibit "C" to the original complaint, (ECF No. 1).
[19] Exhibit E, *supra* note 8.

dispute she complained to Sacred Heart about its staff.[20] Likewise, Plaintiff cannot dispute her authorship of the letter to Sacred Heart threatening legal action.[21]

**Racial Harassment**

In addition to the claims of disparate treatment, Plaintiff apparently asserts a claim of a hostile work environment. In the complaint, Plaintiff alleges that "corporate executives alluded that African American employees are huge issues, thieves, and troublemakers … [and] instructed Caucasian managers, such as Ms. Little and Ms. Reising to 'clean house' by firing … African-American employees on all shifts and threatened to terminate Caucasian managers if they did not staff more … Caucasian … than African-American employees in their Caucasian clients' homes such as [Plaintiff's] former client, A. Austin."[22]

Plaintiff further alleges that Ms. Reising verbally attacked her over the telephone and retaliated against her for making a complaint of discriminatory treatment against Ms. Reising to Ms. Beanblossom in April 2011, and attaches a copy of Plaintiff's letter to Ms. Beanblossom dated April 1, 2011.[23] In this letter, however, Plaintiff makes no complaint of discrimination but merely addresses the role of new caregivers and the night-time care schedule. Plaintiff alleges that despite this letter, allegedly advising Defendants that discrimination existed in Plaintiff's place of employment, Defendants tolerated the discrimination and failed to take measures to prevent it.[24]

---

[20] Exhibit F, *supra* note 18, at 4, in which Plaintiff contends she did not inform Defendants of her claim of retaliation.
[21] Exhibit F, *supra* note 8, at 3, in which Plaintiff asserts authorship of the "fax to Kim Thieneman" (ECF No. 1-7, at 4 of 11).
[22] Fifth Am. Compl. ¶ 7.
[23] *Id.* ¶ 9.
[24] *Id.* ¶10.

**Class Action/Additional Plaintiffs**

Finally, Plaintiff alleges she represents a class of similarly situated former and current African-American employees and seeks class certification for their claims.[25] In addition, plaintiff attempts to allege disparate treatment on behalf of three "Jane Doe" plaintiffs who are African-American women and former employees of 3B.[26]

### III.

In the Fifth Amended Complaint, Plaintiff pleads federal claims of racial and age discrimination in employment, constitutional torts, and civil rights violations under 42 U.S.C. § 1981. Plaintiff also asserts state law claims of wrongful discharge, contract and equity claims, intentional infliction of emotional distress, and other state statutory claims.

Before addressing these individual claims, the Court will turn to the class allegations and Jane Doe plaintiff allegations. A party proceeding *pro se* may not represent another party in any action in federal court, absent admission to practice law. 28 U.S.C. § 1654; *Shepherd v. Wellman*, 313 F.3d 963, 970-71 (6th Cir. 2002). Plaintiff is not a lawyer and may only prosecute her own claims as a *pro se* party. Therefore, Plaintiff's class action claims and claims on behalf of three Jane Doe plaintiffs must be dismissed.[27]

The constitutional torts generally alleged in the amended complaint, likewise, must be dismissed because they lack an essential element: state action. *See Flagg Bros. v. Brooks*, 436 U.S. 149, 155 (1978). Defendant 3B is not a government employer. Each Defendant is a private party. Because no Defendant is a state actor, or agent of a government, the constitutional claims must be dismissed.

---

[25] *Id.* ¶¶ 11, 98-125, 126-135.
[26] *Id.* ¶¶ 98-109.
[27] Fifth Am. Compl., counts 1, 9, and 10. The individual claims in counts 9 and 10 are duplicative of the individual claims in count 1.

The gravamen of Plaintiff's complaint is a claim of employment discrimination, for both age and race, under Title VII of the Civil Rights Act of 1964, 42 U.S. C. § 2000e *et seq*.; 42 U.S.C. § 1981; and the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 623. As a preliminary matter, the Court will address the federal employment claims asserted against individual Defendants Brent Beanblossom, Rebecca Beanblossom, and Kim Little. The claims asserted against the individual Defendants are not legally viable. Even under a liberal construction afforded to *pro se* litigants' pleadings, *Boag v.MacDougall*, 454 U.S. 364, 365 (1982), the complaint contains no allegations to support a claim that any individual Defendant is an employer or in any way liable under Title VII or the ADEA.[28]

In *Wathen v. General Electric Co.*, 115 F.3d 400 (6th Cir. 1997), the Sixth Circuit held that "an employee/supervisor, who does not otherwise qualify as an 'employer', cannot be held individually liable under Title VII and similar statutory schemes," including the ADEA. *Id.* at 404 n.6. Title VII defines an "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees … ." 42 U.S.C. § 2000(e)(b). The ADEA similarly defines an "employer" as "a person engaged in an industry affecting commerce who has twenty or more employees … ." 29 U.S.C. § 630(b). In *Wathen* the Sixth Circuit stated, "Congress did not intend individuals to face liability under the definition of 'employer' it selected for Title VII." *Id.* at 406; *Griffin v. Finkbeiner*, 689 F.3d 584, 600 (6th Cir. 2012). The

---

[28] Defendants also argue Plaintiff has failed to exhaust her administrative remedies against the individual Defendants. The Court agrees. As a general rule, Title VII claims may only be brought against parties named as respondents in an EEOC charge. *Romain v. Kurek*, 836 F.2d 241, 245 (6th Cir. 1987) (dismissing defendant not named in EEOC charge who lacked notice of the charge, nor held an identity of interest with party named in charge); *see also Vakharia v. Little Co. of Mary Hosp.*, 917 F.Supp. 1282, 1294 (N.D.Ill. 1996) (dismissing all defendants but one named in the charge for failure to satisfy EEOC preconditions to suit); *Secrist v. Burns Int'l Security Services*, 926 F.Supp. 823, 825 (E.D.Wis. 1996) (rejecting exception for *pro se* litigants to the EEOC requirement to provide defendants notice and opportunity to participate in administrative procedures). Here, the charge of discrimination fails to name any individual Defendant as a respondent, a prerequisite to filing a civil action in federal court under § 2000e-5(e)(1), (f)(1).

9

same reasoning applies under the ADEA. The Court will therefore dismiss the Title VII and ADEA claims of employment discrimination against the individual Defendants.

The Court will now turn to the underlying merit of the employment claims, i.e., the ADEA, Title VII and § 1981, as pleaded in the Fifth Amended Complaint.[29] Throughout the lengthy pleading, there are simply no facts to support the conclusory allegations that Plaintiff suffered employment discrimination on the basis of her age. Her pleading simply offers "labels and conclusions" and a "formulaic recitation" of age discrimination, a pleading which is insufficient under the *Twombly and Iqbal* standard. Because Plaintiff fails to allege any facts linking her claims to her age, the ADEA claim is implausible on its face and must be dismissed.

Plaintiff's race discrimination claims under Title VII chiefly involve allegations of disparate treatment. Absent direct evidence, such cases are governed, generally, under principles set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and *Texas Comm. Affairs Bd. v. Burdine*, 450 U.S. 248 (1981). *See Keys v. Humana*, 684 F.3d 605, 608-09 (6th Cir. 2012) (explaining that a *prima facie* case under the *McDonnell* burden-shifting framework is an evidentiary rather than pleading standard, *Swierkiewicz v. Sorema*, 534 U.S. 506 (2002)). In short, the plaintiff must show that the prohibited trait (age or race) was a "motivating" or "substantial" factor in the employer's adverse employment decision. *University of Texas Southwestern Med. Ctr. v. Nassar*, 133 S.Ct. 2517 (2013). (explaining causation ruling in *Price Waterhouse v. Hopkins*, 490 U.S. 22, 298 (1989)). Under § 1981, the plaintiff must show that racial discrimination "drove the decision" of the defendant to block or impair some contractual (employment) right of the plaintiff. *Williams v. Richland County Children Servs.*, 489 F. App'x 848, 851 (6th Cir. 2012).

---

[29] The Court does not construe the thrust of Plaintiff's allegations as stating a formal claim of retaliation but construes the allegations as expressing lay usage and meaning of the term "retaliate." *See infra* note 23. The Court agrees with the Defendants' argument that any claim of retaliation is essentially a reiteration or component of the racial discrimination claim.

Defendants argue Plaintiff's race discrimination claims under Title VII and § 1981 are devoid of factual basis and, therefore, are insufficient under the *Twombly and Iqbal* standard. Defendants argue that despite the seventy-four pages of conclusory statements of mistreatment, Plaintiff fails to identify anyone who was treated differently than she to support a circumstantial case of racial discrimination. Defendants rely, in part, on *Han v. University of Dayton*, 541 F. App'x. 622 (6th Cir. 2013), in which the Sixth Circuit recently concluded that a § 1981 and Title VII complaint did not satisfy the plausibility standard under *Twombly and Iqbal* because the plaintiff failed to identify anyone treated less favorably than employees similarly situated to the plaintiff. In the same manner, Defendant argues, Plaintiff has failed to identify any Caucasian employee who was treated more favorably under similar circumstances. The Court concludes this argument is well taken.

The facts alleged in the amended complaint support only the remote and unspecific possibility of intentional discrimination. Although the amended complaint is replete with conclusory allegations, it omits the necessary factual content to support a plausible inference of intentional discrimination. Beyond bare and conclusory assertions, Plaintiff alleges no facts from which a reasonable person could infer how her race factored into the employer's decisions, or caused her to lose her job, as opposed to any other nondiscriminatory basis for decisions regarding her employment. *See Antoinette Taylor v. JPMorgan Chase Bank*, slip op., 2014 WL 66513 (E.D.Ky. Jan. 8, 2014) (dismissing Plaintiff's racial discrimination and numerous other claims for failure to plead facts above the *Twombly and Iqbal* threshold). "[W]hether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." *Iqbal*, 556 U.S. at 664. The facts alleged in the Fifth Amended Complaint, accepted as true and reviewed in a light most favorable to Plaintiff, set out a context

in which any inference of intentional discrimination would be implausible and purely speculative.

Plaintiff cannot rely on mere conclusory allegations that unnamed individuals were treated more favorably. Plaintiff suggests that Ms. Reising was treated more favorably; however, Ms. Reising was not similarly situated according to Plaintiff's own allegations: Ms. Reising was a senior executive, a manager, and according to Plaintiff violated one policy provision. Ms. Little is a senior executive and likewise, offers no comparative value to Plaintiff's case. *Plaintiff has not identified another caregiver by name accused of sleeping on shift, creating a rift with a facility-client, or seven policy infractions. See Keys*, 684 F.3d at 609 (holding sufficient under *Twombly and Iqbal* because, *inter alia*, the plaintiff-manager identified key management counterparts by name or company title). Plaintiff's conclusory allegations of race discrimination under Title VII and § 1981 are the type of "unadorned, the defendant-unlawfully-harmed-me accusation," *Iqbal*, 556 U.S. at 678, the Supreme Court sought to eliminate in *Twombly* and *Iqbal*.

The same conclusion applies to Plaintiff's claim of a racially-hostile work environment: Plaintiff's amended complaint contains no factual content to support a plausible inference of a racially hostile work environment. The allegations of harassment, accepted as true and reviewed in a light most favorable to Plaintiff, do not satisfy the parameters set forth in *Harris v. Forklift Sys., Inc.*, 510 U.S. 14, 21 (1993); *see also Nat'l Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) ("In determining whether an actionable hostile work environment claim exists, we look to all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." (internal quotations omitted)).

Defendants further argue, as an independent basis for dismissal, that Plaintiff did not exhaust her administrative remedies as to this claim. The Court agrees. Plaintiff's charge of discrimination charges discriminatory *discharge* and mentions no other allegations that might suggest a hostile work environment. The rule of exhaustion, as stated in this judicial circuit, requires that if the facts alleged in the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim. *Davis v. Sodexho, Cumberland Coll. Cafeteria*, 157 F.3d 460, 463 (6th Cir. 1998); *see e.g.*, *Brown v. City of Cleveland*, 294 F. App'x 226 (6th Cir. 2008) (dismissing uncharged harassment claim for failure to exhaust because the facts did not grow out of the claim of discriminatory denial of promotion). Because there are no allegations in Plaintiff's charge that she was subjected to racial harassment, nor any facts to suggest the EEOC investigated any claim other than discriminatory discharge, the racial harassment claim must be dismissed for failure to exhaust the available administrative remedies.

In summary, the Fifth Amended Complaint fatally relies on conclusory allegations. Federal courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 556. After discarding the legal conclusions, the question becomes whether the actual remaining facts state a plausible claim for relief. In the Eastern District of Kentucky, the district court reviewed pleadings drafted by Plaintiff, proceeding *pro se*, albeit in an unrelated matter alleging discrimination. *See Taylor v. JPMorgan Chase Bank*, slip op., 2014 WL 66513 (E.D.Ky. Jan. 8, 2014). There, the district court found Plaintiff's pleadings lacked the requisite factual content to satisfy the *Twombly* and *Iqbal* standard. Here, the Fifth Amended Complaint states "legal conclusions that are only masquerading as facts and need not be accepted." *Id.* Despite five amendments to the complaint, Plaintiff's allegations fall far short of asserting facts establishing the plausibility of her claims.

Because the Fifth Amended Complaint fails to state any federal claims on which relief can be granted, the Court declines to exercise supplemental jurisdiction over any state law claims contained in the Fifth Amended Complaint, pursuant to 28 U.S.C. § 1367(c).

The Court will enter a separate order consistent with this Memorandum Opinion.

DATE: September 30, 2014

Charles R. Simpson III, Senior Judge
United States District Court

Copies to:
Antoinette C. Taylor, *pro se* plaintiff
Counsel of Record